60   171
85   32

</div>

## J. M. TUCKER ET AL. v. JAMES A. HAMLIN.

(Case No. 1408–4497.)

1. MEASURE OF DAMAGES.— The measure of damages for the wrongful seizure and conversion of goods is their value at the place of seizure on the day of their conversion; not what might be realized if they were retailed in small quantities and at different times. Evidence of their value, if retailed, tending in its nature to confuse and incline the jury to render a verdict for an excessive amount, will, if excepted to, when such is its result, be cause for new trial.

2. SAME.— The practice of admitting improper evidence, and then attempting to correct its effect by instructions, again disapproved; following Gulf, Col. & S. F. R'y Co. v. Levy, 59 Tex., 543. Even when the court, in the charge, lays down a correct rule for estimating damages, evidence only proper if a different rule should prevail, tends, in its nature, to confuse, and its effect upon the verdict cannot be measured.

3. EVIDENCE.— A conversation between a witness and third persons, not in the presence of a party to the suit, against whom the substance of such conversation is sought to be used, is not admissible in evidence.

4. CHARGE OF COURT — FRAUD.— See statement of case for charge of court on fraud held not to be erroneous.

5. CHARGE OF COURT.— It is not error to refuse a special charge which has been substantially given in different language in the general charge.

APPEAL from Williamson. Tried below before the Hon. W. A. Blackburn.

Suit by the appellee against appellants for damages for the seizure and conversion of a stock of liquors valued at $1,005.96, and claimed by defendant as his property. The petition contained allegations of malice on the part of the defendants in the seizure and conver- sion of the property, and prayed for actual and exemplary damages amounting to $3,125.69. To this petition the defendants answered, admitting the seizure of the property, and alleging that Tucker, as sheriff of Williamson county, under the direction of the other de- fendants, had levied upon the property by virtue of an attachment issued out of the county court of Williamson county on the 4th day of April, 1881, in favor of the defendants against one J. A. Scott, for the sum of $463.62. They denied that the appellee was the owner of the goods, and alleged them to be the property of Scott, against whom they had a judgment for $563.62, and charged that appellee's claim to the goods was not genuine; that Scott had transferred them to appellee for the purpose of defrauding his cred- itors, and that appellee had notice of the fraudulent intent on the part of Scott, and aided and assisted him in perpetrating the fraud.

The court permitted the witness A. S. Fisher to relate to the jury the substance of conversations held by him at different times with J. A. Scott, the appellee J. A. Hamlin, and one R. W. Hill, in the absence of the defendants. Said conversations related to and were intended to explain the transaction and sale charged by de- fendants to have been fraudulent. To the admission of this evidence the defendants objected.

The court permitted the appellee Hamlin and the witnesses Crosby and Freeman, over the objections of the defendants, to testify to the value of liquors when sold by the drink over the counter of a saloon or bar-room in Georgetown, Texas, for the purpose of fixing the measure of damages. To this defendants excepted.

The court in its charge failed to instruct the jury that a knowledge of such facts by Hamlin of the fraudulent intention of Scott in making the sale as were calculated to arouse suspicion in his mind as to the intention of Scott, and put him upon inquiry, would be suffi- cient to affect him with notice of the fraudulent intention of his vendor, Scott, though asked by the defendant so to charge.

The court refused to give instructions numbers 1 and 2, asked by the defendants. They were as follows:

No. 1. " If you believe, from the evidence, that at the date of the sale of the goods by Scott to Hamlin, Scott was indebted to other parties, and that he was insolvent, and that he made said sale for the purpose of hindering, delaying or defrauding his credit-

ors, and that Hamlin knew of such fraudulent intent on the part of said Scott, or was in possession of such facts as should have put him upon inquiry as to the intention and condition of said Scott, and that he could have ascertained the same by the use of ordinary diligence, then such sale would be null and void as to other creditors of Scott, notwithstanding Hamlin may have paid full value for said goods, and you will find for the defendants so far as the goods conveyed by said sale are concerned."

No. 2. " If you find, from the evidence, that the goods levied upon and sold under the order of sale in favor of Bertram & Moeller v. Scott were at the date of the levy the property of Hamlin, you will find a verdict for the plaintiff, and assess his damages at the market value of said goods in the quantities described in the petition, in Georgetown, at the date of said levy, with interest thereon at eight per cent. per annum from said date."

Hamlin knew that Scott was in debt to various parties, and that he had tried to sell his stock of goods at a sacrifice.

The witnesses Jordan and Junck, who were the only witnesses examined as to the true market value of the property, testified as follows: Jordan said it was worth $602.89; Junck said it was worth $442.69. The jury assessed its value at $750.

The verdict was for appellee for $792.50.

The assignments of error were:

*First.* The court erred in permitting the witness A. S. Fisher to testify, over objections, to conversations had between said witness and J. A. Scott, J. A. Hamlin and R. W. Hill, not in presence of defendants.

*Second.* The court erred in permitting the witnesses Hamlin, Crosby and Freeman, over objections of defendants, to testify to the retail price of liquors sold over the counter of a bar-room at Georgetown, because the evidence was irrelevant and incompetent, for reasons stated in bill of exceptions No. 2.

*Third.* The court erred in its charge to the jury, in paragraph No. 2, page No. 5, of the charge, where the court attempts to instruct the jury what evidence would be sufficient to establish the fraudulent character of the sale of goods by Scott to Hamlin, so far as Hamlin was concerned.

*Fourth.* The court erred in refusing charges Nos. 1, 2, 3, 4 and 5, asked by defendants, to which reference is here made.

*Fifth.* The court erred in overruling defendants' motion for a new trial for the several reasons stated therein

*Makemson, Fisher & Price* and *Walter Acker*, for appellee, cited:
Wright *v.* Linn, 16 Tex., 34; Stadtler *v.* Wood, 24 Tex., 622; Norton
*v.* Mallory, 63 N. Y., 434; Goodgame *v.* Col, 12 Ala., 77, 78; Fisher
*v.* True, 38 Me., 535; Bailey *v.* Mills, 27 Tex., 434; McQuinnay *v.*
Hitchcock, 8 Tex., 33; Moseley *v.* Gainer, 10 Tex., 393; Frazer *v.*
Thatcher, 49 Tex., 26.

*Geo. F. Pendexter* and *Jas. H. Robertson*, for appellant, cited on
admitting improper evidence: 1 Greenl. on Ev., secs. 197–199; Moore
*v.* Aldrich, 25 Tex. Sup., 276; Ingram *v.* Rankin, 32 Am. Rep., 762;
Harris *v.* Finberg, 46 Tex., 79; 2 Sedgwick on Dam., 382, 532.

On fraud they cited: Humphries *v.* Freeman, 22 Tex., 45; Moore
*v.* Aldrich, 25 Tex. Sup., 280; Woolsey *v.* McMahan, 46 Tex., 63;
Thurmond *v.* Trammell, 22 Tex., 257; and Eborn *v.* Zimpleman,
47 Tex., 504.

WILLIE, CHIEF JUSTICE.— This was a suit by the appellee against
J. M. Tucker, sheriff of Williamson county, and his co-defendants to
recover damages for the alleged unlawful seizure and conversion of
a stock of liquors and other articles claimed by the appellee to be
his property.   One of the issues for the jury to determine was the
amount of damages the plaintiff below was entitled to recover in
case he succeeded in the action.   The measure of such damages has
been well settled by the decisions of this court to be the value of the
goods seized at the place of seizure on the day of conversion, and
interest on that value.   Blum *v.* Merchant, 58 Tex., 400; Wallace *v.*
Finberg, 46 Tex., 35.

This of course means their value in the exact condition they were
at the time of seizure, and does not refer to what might be obtained
for them if retailed in small quantities at different times, and in a
different shape from that in which they were found by the party
converting them.   To allow the retail value of the goods to be re-
covered would be not only to include as damages the profits which
the party might have made over and above the wholesale price of
the goods, but also pay for the expense to be incurred and the
time and labor to be employed in disposing of them.   Hence the
value of the liquors when sold by the drink at a saloon was not a
legitimate subject of inquiry in the case; and evidence upon the
subject tended only to confuse the jury, and cause them to incline
towards the highest amount of damages proved in making up their
verdict.   Such evidence was admitted by the court over the objec-

tions of appellants, and to this ruling exception was properly taken below, and the second assignment of error brings it up for revision of this court.

It is attempted to justify the admission of this evidence for the reason that it was brought out on cross-examination to test the accuracy and extent of the witness' knowledge as to market value by inquiring as to particular sales and retail prices.

Inquiries as to particular sales are sometimes admitted for such purposes, but the sales must be of the article in like quantities and condition as that involved in the case on trial. If the witness had testified as to sales of liquors by the barrel, case or dozen, it would perhaps have been allowable; for the liquors in question were put up in one or the other of those shapes at the time they were levied upon. But their price by the drink threw no light upon their wholesale value, but, on the contrary, tended rather to fix a false standard by which to estimate it.

Nor did the fact that the judge laid down the true measure of damages in his charge cure the error committed in allowing this illegal testimony to go to the jury. The practice of admitting improper evidence over the objections of a party, and afterwards attempting to counteract its influence by telling the jury to disregard it, has been unfavorably commented upon by this court in the case of Gulf, Col. & S. F. R'y Co. v. Levy, 59 Tex., 543 (1 Law Rev., 344).

That cause was reversed upon no other ground except for the course thus pursued by the court below, and it was said that the court would not encourage the practice of admitting improper evidence with the expectation of controlling it by the charge. There the jury were expressly directed not to consider the evidence in making up their verdict. Here the court, in effect, did the same thing, and laid down a rule of damages which, if correct, as it undoubtedly was, clearly showed that there was error in admitting proof as to the retail price of the goods seized under attachment. In such state of case the jury must have been somewhat in doubt as to the standard by which they should measure the damages. They must have supposed that, in arriving at their value at the time and place of the seizure, they were to take into consideration the retail price, or at least let it in some degree control the smaller value placed upon them by the witnesses who testified as to their worth at wholesale. If not, why did the court allow such evidence to come before us? they might reasonably inquire. No witness placed this wholesale value at more than $600, and some much below that; and yet the jury found the actual damages to be $750, besides interest.

The plaintiff, it is true, said the liquors, etc., were worth to him, as a saloon-keeper, $1,000, but from this statement itself and his whole evidence on this subject, taken together, it is clear that he meant that they would bring this amount when disposed of in his saloon by the retail.

We think the court erred in admitting this illegal testimony over the objection of appellants. As for this error the judgment must be reversed and the cause remanded, we will add that, in our opinion, there was error in admitting such of the evidence of Fisher as consisted of statements made by third parties not in presence of appellants, which tended to show an indebtedness of Scott to P. J. Willis & Bro., and to appellee, or good faith in the transfer from Scott to Hamlin. These statements were made subsequent to the accrual of the debt in favor of Bertram & Moeller, and at a time when steps were being taken by Willis and Hamlin to obtain a preference over them, either by attachments or purchase. Some of the same facts were proved by Hamlin, by whom a portion of the statements were made, and Scott, who made the others, could have been called to the stand to testify as to them. The court attempted to control the effect of this evidence by directing the jury to disregard a large portion of it, but, as we have shown, this did not cure the error of letting it go to the jury over the objections of appellant.

We think that the court did not err in giving the third paragraph of the charge complained of in the third assignment of error, for whilst that paragraph instructed the jury to find for defendants, if the sale to Hamlin was fraudulent and the latter knew that it was so, yet immediately afterwards, and in the same connection, he charged in effect that the defendants should have a verdict if Hamlin had good reason for believing that Scott's transfer was for the purpose of defeating his creditors.

Nor did the court err in refusing the second special charge asked by appellant's counsel, for substantially the same charge, though expressed in different language, had already been given by the court in its general instructions to the jury. Humphries v. Freeman, 22 Tex., 45, 50. The other errors assigned are not such as to require attention.

For the errors set forth in first and second assignments of error, the judgment is reversed and the cause remanded.

<div align="right">Reversed and remanded.</div>

[Opinion delivered October 16, 1883.]